[No. 85737-7.   En Banc.]

Argued February 16, 2012.     Decided January 31, 2013.

THE STATE OF WASHINGTON, *Respondent*, v. EMIR BESKURT ET AL., *Defendants*, TANER TARHAN, *Petitioner*.

442

*Steven Witchley* (of *Ellis Holmes & Witchley PLLC*), for petitioner.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Randi J. Austell, Deputy*, for respondent.

*Jeffrey E. Ellis* and *Suzanne L. Elliott* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 C. JOHNSON, J. — This case involves whether the sealing of juror questionnaires amounts to a trial closure, implicating a defendant's federal and state constitutional rights to a public trial. In this case, questionnaires were given to and completed by prospective jurors to assist counsel in jury selection and to possibly identify who would be individually questioned outside the presence of the entire venire but in open court. Several days after the jury was selected, the trial court sealed the questionnaires. On appeal, the Court of Appeals, primarily relying on its decision in *State v. Coleman*, 151 Wn. App. 614, 214 P.3d 158 (2009), held that Taner Tarhan's right to a public trial had not been violated. However, the court held that the trial court's failure to conduct a *Bone-Club*[1] analysis before sealing the questionnaires was inconsistent with the public's right of open access to court records and remanded the case for reconsideration of the sealing order. We affirm but hold that remand is unnecessary.

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

## FACTS

¶2 Tarhan and three codefendants[2] were charged by information with one count of second degree rape by forcible compulsion. All four defendants were tried jointly before a jury. Prior to commencement of voir dire (jury selection), the parties and court agreed that each member of the venire would complete a questionnaire to assist in questioning of prospective jurors. The prosecutor and Tarhan's counsel submitted proposed questionnaires to the court. Both proposals included language explaining that the questionnaire was designed to obtain information concerning the person's ability to sit as a fair and impartial juror in the case; that responses to the questions would not be available to the public; and that if the person did not want to discuss personal information in open court, private questioning could be conducted.[3] This language was also included on the final questionnaire, which was largely based on the prosecutor's proposal.

¶3 After the questionnaires were completed, copies were given to each attorney. In deciding to let the attorneys take the questionnaires home overnight, the trial judge stated:

I'm very reluctant to have [the questionnaires] leave the courtroom . . . .

. . . .

. . . You can imagine why I'm nervous about having [the questionnaires] leave the courthouse. . . . [Y]ou are very experienced attorneys and I think you recognize what a disaster it would be if people thought that their information was going to get Xeroxed and sent around town.

Because you're officers of the court and I have such respect for all of you, I will let you take [the questionnaires] home

---

[2] Taner Tarhan's twin brother, Turgut Tarhan, who was also a defendant, is not part of this appeal.

[3] Tarhan's proposed questionnaire also included assurances that responses would be destroyed if the person was not selected or, if selected, sealed in the permanent record.

tonight, and that, I think, will allow us to be more efficient tomorrow.

Verbatim Report of Proceedings (VRP) (June 23, 2008) at 118, 119.

¶4 The attorneys used the questionnaires to identify which prospective jurors would be questioned individually, outside the presence of the venire. Additional jurors were flagged for individual questioning based on their responses during the first phase of general voir dire. Voir dire occurred in open court. During individual voir dire, the attorneys asked the prospective juror questions from the questionnaire, which also prompted follow-up questions. For-cause challenges to prospective jurors were based on the answers given in open court.

¶5 Several days after jury selection was completed, the trial court entered an order sealing the juror questionnaires. The court found that the sealing was supported by compelling circumstances, explaining that "[j]urors signed confidential questionnaires containing private information concerning sexual abuse with the understanding that the questionnaires would be sealed." Clerk's Papers (CP) at 74. No objections were made, and no attorney signatures appear on the order. There is no indication in the record or from the briefing that the copies provided to counsel were included as part of the trial court's order.

¶6 The jury found all four defendants guilty of the lesser charge of third degree rape. Tarhan was sentenced to 10 months in jail. On appeal, the three codefendants' cases were consolidated, and Tarhan's appeal proceeded separately. In an opinion published in part, the Court of Appeals affirmed Tarhan's conviction. *State v. Beskurt*, 159 Wn. App. 819, 835, 246 P.3d 580 (2011).

¶7 We granted Tarhan's petition for review.[4] *State v. Beskurt*, 172 Wn.2d 1013, 259 P.3d 1109 (2011).

---

[4] Washington Association of Criminal Defense Lawyers submitted an amicus brief in support of the petitioner.

## ISSUE

¶8 Did the sealing of juror questionnaires violate the defendant's public trial right?

## ANALYSIS

¶9 The public trial right is protected by the federal and state constitutions. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, §§ 22, 10. Under the language of the Washington Constitution, article I, section 22 guarantees the defendant a right to a public trial by an impartial jury, while article I, section 10 affords the public and press the right to open and accessible court proceedings. The public trial right "is designed to 'ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury.'" *State v. Strode*, 167 Wn.2d 222, 226, 217 P.3d 310 (2009) (quoting *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005)). The guaranty of open proceedings extends to the process of jury selection. *Strode*, 167 Wn.2d at 226.

¶10 In this case, the arguments focus on whether restriction of public access to the juror questionnaires results in a closure under article I, section 22. Tarhan contends it does, arguing that what occurred amounted to structural error, requiring reversal of his conviction and remand for a new trial. The Court of Appeals agreed with Tarhan that the trial court erred by failing to conduct a *Bone-Club* analysis but held the proper remedy was remand to the trial court to conduct such a hearing in order to justify the sealing, but no new trial was required. The court relied primarily on its previous decision in *Coleman*. There, the trial court similarly sealed juror questionnaires. On review, the Court of Appeals held that the sealing order violated the public's right to open courts under article I, section 10 but not the defendant's right to a public trial under article I, section 22. Because this was not structural error, it concluded the

proper remedy was remand to the trial court to reconsider the sealing order by conducting the required hearing. In determining that the error was not structural, the Court of Appeals noted that the questionnaires were used as part of jury selection, which occurred in open court; that the questionnaires were not sealed until several days after the jury was seated and sworn; and that there was nothing in the record indicating the questionnaires were unavailable for public inspection during the selection process. The Court of Appeals here found Tarhan's case factually indistinguishable from *Coleman*.

¶11 Tarhan contends *Coleman* must be overruled in light of our *Strode* decision, where the lead opinion indicated that a violation of the defendant's right to a public trial constitutes structural error for which automatic reversal for a new trial is required. Tarhan, however, conflates his section 22 and the public's section 10 rights by assuming that a section 10 violation, which the Court of Appeals found in *Coleman* and here, necessarily violates section 22. But, though related and often overlapping, a defendant's and the public's rights are separate. Whenever a defendant raises a public trial right issue, the inquiry is whether his section 22 rights were violated. If there is no section 22 violation, then the new trial remedy in *Strode* does not apply.[5] Still, we find discussing both the defendant's and public's rights is needed because Tarhan relies on both to claim a public trial violation and because the Court of Appeals found a violation of one but not the other.

¶12 Before we determine whether either an article I, section 10 or article I, section 22 violation occurred, we must first determine whether there was a closure implicating those rights. Despite having a copy of and actively using the questionnaires during open voir dire, Tarhan nevertheless

---

[5] In *Strode*, the trial court conducted a portion of individual voir dire in chambers, during which for-cause challenges were registered in chambers and were granted or denied in chambers. The court concurred that the in-chambers voir dire amounted to a courtroom closure violating the defendant's section 22 rights and reversed the conviction.

attempts to establish that the restriction on public access to the questionnaires constituted a closure. He contends the record supports this because (1) the trial court was reluctant to have the questionnaires removed from the courthouse over concern that they could be "Xeroxed and sent around town" and (2) the questionnaire itself provided that the "responses on the questionnaire will not be available to the public and will eliminate having to ask these questions in open court." VRP (June 23, 2008) at 119; CP at 1372. We disagree. Under the facts here, this was not a closure that affected Tarhan's public trial right or the public's rights. The questionnaires were completed prior to voir dire and utilized by the attorneys as a "screening tool." This facilitated the process by helping the attorneys identify which venire members would be questioned individually in open court and what questions to ask, if any. During general and individual voir dire, the judge, the prosecutor, and defense attorneys, including Tarhan's counsel, questioned venire members in order to determine their ability to sit as an impartial juror. At most, the questionnaires provided the attorneys and court with a framework for that questioning. In some instances, the court began by reiterating a prospective juror's questionnaire response and then asked that person to elaborate in open court. And in other instances, some jurors were not questioned at all from their written responses. Nothing suggests the questionnaires substituted for actual oral voir dire. Rather, the answers provided during oral questioning prompted, if at all, the attorneys' for-cause challenges, and the trial judge's decisions on those challenges all occurred in open court. The public had the opportunity to observe this dialogue. The sealing had absolutely no effect on this process. The order was entered after the fact and after voir dire occurred; it did not in any way turn an open proceeding into a closed one.[6] Importantly, everything that was required to

---

[6] Moreover, only one copy of the documents was sealed. No order requiring counsel return their copies was produced, and the record is unclear as to what happened to those copies.

be done in open court was done. Therefore, we hold that no closure implicating Tarhan's public trial rights occurred.

¶13 We now turn to the Court of Appeals' conclusion that the trial court's sealing order violated the public's right under article I, section 10 and remand for a hearing and findings to justify the sealing.[7] Public access to court records is governed by General Rule (GR) 31. The rule seeks to balance our state's constitutional rights to judicial openness under article I, section 10 with individual privacy under article I, section 7. GR 31(a). To the extent juror questionnaires are within the scope of the rule,[8] "[i]ndividual juror information, other than name, is presumed to be private." GR 31(j). Anyone seeking to access this information petitions the trial court for access and must make a showing of good cause. GR 31(j). The privacy presumption of individual juror information exists until GR 31(j) procedures are triggered and requirements are met, none of which occurred here. Because we find no article I, section 10 issue to review, remand is unnecessary.

## CONCLUSION

¶14 For the reasons outlined above, we affirm Tarhan's conviction but reverse the decision to remand.

OWENS and J.M. JOHNSON, JJ., and JOHANSON, J. PRO TEM., concur.

---

[7] Tarhan has not argued for remand for a new hearing but, rather, seeks a new trial.

[8] Not every document in a court's possession is a court record subject to the rule. As utilized in this case, the completed questionnaires seem more administrative. Unlike the proposed questionnaires that were attached to the trial briefs submitted to the court, the completed ones were never filed with the court or used as part of the court's decision-making process. They were used as preparation only for in-court voir dire, which, as mentioned, was open. We doubt the completed questionnaires in this case qualify as court or trial records. Unless someone expressed an interest in the completed questionnaires or a party attached a questionnaire to a motion, for example, challenging the court's decision to seat a juror, the trial court could have discarded the questionnaires following trial.

¶15 MADSEN, C.J. (concurring) — I would hold that Taner Tarhan's failure to object to the closure precludes his right to review of his claim that his right to a public trial was violated when questionnaires that were used as tools to prescreen potential jurors and focus voir dire were sealed after the jury was selected. He is not entitled to review under RAP 2.5(a)(3) because the error that he alleges is not manifest error affecting a constitutional right.

¶16 I recognize that the court has previously concluded that the failure to object to closure does not preclude appellate review of a claim that the defendant's right to a public trial was violated. However, in doing so, the court followed case law that has been superseded by a court rule. We should make the necessary correction and recognize that just as in the case of other important constitutional rights, review of claimed error involving the right to a public trial should proceed in accordance with the Rules of Appellate Procedure. When constitutional error is claimed and no objection was made at trial, RAP 2.5(a)(3) controls and permits review only when the claimed error is manifest error affecting a constitutional right. Under this standard, review is inappropriate in this case.

## Discussion

¶17 The prospective jurors filled out questionnaires concerning sensitive and personal matters that might bear on their ability to serve as impartial jurors. Copies of the questionnaires were provided to both sides for use in determining which jurors should be individually questioned outside the presence of the rest of the venire. The questionnaires were also used to assist in voir dire. When the questionnaire answers prompted for-cause challenges, the trial court's decisions on such challenges occurred in open court. Jury voir dire and selection occurred in open court. After the jury was selected, the questionnaires were sealed, as the venire members were told in advance that they would be.

¶18 Mr. Tarhan did not object to this procedure. The failure to object to the procedure precludes review under our usual rules for appellate review. But before this conclusion can be reached, the court must correct its mistaken approach to review of this claimed error. In *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), the court held that the defendant's failure to object to a courtroom closure did not constitute waiver under *State v. Marsh*, 126 Wash. 142, 146-47, 217 P. 705 (1923). In recent cases, the court has treated this as an absolute rule that no objection is required for review of any claim that the right to a public trial was violated. *E.g., State v. Brightman*, 155 Wn.2d 506, 514-15, 122 P.3d 150 (2005); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 800, 100 P.3d 291 (2004). But the holdings in *Brightman, Orange*, and *Bone-Club* are not based on RAP 2.5(a) but instead on *Marsh*.

¶19 The rule set out in *Marsh* was the prevailing general common law rule at the time it was decided. The rule provided that when a constitutional right had been violated, error would be considered on appeal notwithstanding any failure to object. *Marsh*, 126 Wn.2d at 146. However, when we adopted the Rules of Appellate Procedure in 1976, RAP 2.5(a) replaced the general rule stated in *Marsh* for constitutional error when the issue is raised for the first time on appeal. *State v. WWJ Corp.*, 138 Wn.2d 595, 601, 980 P.2d 1257 (1999). In continuing to follow *Marsh*, the court has ignored our own rules for appellate review of claimed constitutional errors, thus undermining the carefully crafted analysis that we otherwise apply to claimed constitutional errors that are just as important as the right to a public trial.

¶20 We should refuse to apply a rule that conflicts with the Rules of Appellate Procedure, that rests on a common law rule no longer applicable, and that subverts the intent of RAP 2.5(a). We should apply RAP 2.5(a) when a defendant fails to object and later contends that his constitutional right to a public trial was violated by a courtroom closure.

¶21 Under the court rule, although a failure to object will generally bar appellate review of claimed errors, an exception exists in the case of manifest error affecting a constitutional right. RAP 2.5(a)(3). To determine if review is appropriate under the rule, a twofold inquiry is made. First, the court determines whether the claimed error is truly of constitutional magnitude, and second, the court must determine whether the error is "manifest." To show that alleged error is "manifest" error, the defendant must show actual prejudice, meaning a " ' "plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case." ' " *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756, 761 (2009) (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007) (quoting *WWJ Corp.*, 138 Wn.2d at 603)). Should the appellate court then determine that a claim of manifest constitutional error has been raised, "it may still be subject to a harmless error analysis." *O'Hara*, 167 Wn.2d at 98.

¶22 Assuming, for present purposes, that the questionnaire process and the sealing order raises a possible public trial issue, thus satisfying the first part of the two-part analysis for determining whether claimed constitutional error is subject to review despite the failure to object, i.e., that the error is truly of constitutional magnitude, I turn to the second part of the inquiry: whether any prejudice is shown. On this basis, if not on the basis of both inquiries, it is obvious that the failure to object bars appellate review because no prejudice to Mr. Tarhan resulted.

¶23 The process of having the questionnaires filled out by prospective jurors was an agreed-upon procedure to facilitate questioning the members of the venire. As a result of this process, Mr. Tarhan was better informed about sensitive matters, specific to the potential juror, that might relate to issues in his trial and affect the juror's ability to serve. He was therefore better able to formulate and focus questions during the actual voir dire, which occurred in

open court. Indeed, the defendant had the completed questionnaires available to assist in voir dire and jury selection. Because the potential jurors were told the questionnaires would be destroyed once the jury was selected, the jurors were far more likely to be candid in answers concerning their personal history and experiences because they knew their answers would be protected and not exposed to public scrutiny.

¶24 In short, with the information obtained from the questionnaires, which itself did not constitute voir dire, the defendant was in a better position to inquire of the venire and to select jurors than he might have been otherwise.

¶25 Actual voir dire occurred in open court. Once the jury was selected, the questionnaires were sealed. At this point, the defendant had actually benefited from the questionnaires and leaving them unsealed would not have enhanced his right to a fair trial. And because the actual voir dire and selection took place in open court, if any assistance in jury selection might have been offered from the public, including relatives and friends, about the jurors or their selection, the opportunity was available.

¶26 Tarhan cannot show any practical and identifiable consequences to his trial. He cannot establish prejudice that resulted, and to the contrary, he benefited from use of the questionnaires without harmful consequences. His failure to object to what he now claims was a courtroom closure within the scope of the right to a public trial and his inability to establish resulting actual prejudice precludes appellate review.

¶27 This is true regardless of the fact that a closure that violates the public trial right may be structural error.[9] The source of the "structural error" determination is *Waller v.*

---

[9] "Structural error" is error that defies harmless error analysis and " 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' " *Washington v. Recuenco*, 548 U.S. 212, 218-19, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (alteration in original) (quoting *Neder v. United States*, 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

*Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) together with subsequent United States Supreme Court cases referring to the open courts violation in *Waller* as structural error. *E.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).

¶28 But despite these references, the Court has indicated several times that appellate review may be denied on procedural grounds where the defendant has failed to object to an alleged violation of the right to a public trial. First, in *Waller*, the Court noted that most of the defendants in the case objected to the closure of the suppression hearing that occurred in the case, but one did not (and in fact joined the prosecution in seeking closure).[10] The Court held that the state courts could determine on remand whether the defendant who did not object was procedurally barred from any relief. *Waller*, 467 U.S. at 42 n.2. The Court specifically narrowed its holding, saying that "we hold that under the Sixth Amendment any closure of a suppression hearing *over the objections of the accused* must meet the tests set out in *Press-Enterprise [Co. v. Superior Court*, 464 U.S. 501, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)] and its predecessors." *Id.* at 47 (emphasis added).

¶29 In *Levine v. United States*, 362 U.S. 610, 619, 80 S. Ct. 1038, 4 L. Ed. 2d 989 (1960), the Court expressly held that the failure to object to a courtroom closure constitutes a waiver of the public trial right. Other courts have noted this holding. *See, e.g.*, *United States v. Christi*, 682 F.3d 138, 143 (1st Cir. 2012); *State v. McGilton*, 229 W. Va. 554, 729

---

[10] The Court explained in a footnote:

Counsel for petitioners Waller, Thompson, Eula Burke, and W.B. Burke lodged an objection to closing the hearing. *Counsel for petitioner Cole concurred in the prosecution's motion to close the suppression hearing.* App. 14a, 15a. Respondent argues that Cole is precluded from challenging the closure. The Georgia Supreme Court appears to have considered the objections of all the petitioners on their merits. [*Waller v. State,*] 251 Ga. 124, 126-127, 303 S.E.2d 437, 441 (1983). Cole's claims in this Court are identical to those of the others. Since the cases must be remanded, we remand Cole's case as well. *The state courts may determine on remand whether Cole is procedurally barred from seeking relief as a matter of state law.*

*Waller*, 467 U.S. at 42 n.2 (emphasis added).

S.E.2d 876, 881 n.4 (2012). In *Christi*, 682 F.3d at 143 n.1, the First Circuit Court of Appeals pointed out that although the public trial right in *Levine* arose under the Fifth Amendment due process clause, this is not significant because the proceeding was a criminal contempt proceeding and not a Sixth Amendment proceeding.

¶30  And in *Peretz v. United States*, 501 U.S. 923, 936-37, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991) (citing *Levine*, 362 U.S. at 619), the Court listed numerous constitutional rights where the right to appeal can be forfeited as a result of the failure to object, noting that "failure to object to closing of a courtroom is waiver of right to public trial."

¶31  Thus, the failure to object can result in a procedural bar to appellate review, notwithstanding references in the Court's decisions to *Waller* as involving structural error.

¶32  Nor would calling the error structural in every case[11] require that we conclude prejudice is necessarily established. As explained, under RAP 2.5(a)(3) there have to be actual, identifiable consequences to the trial. Appellate rules governing review can be applied to claimed structural error. The United States Supreme Court has expressly stated that rules governing appellate review can be applied to claims of structural error. *Johnson v. United States*, 520 U.S. 461, 466, 117 S. Ct. 1544, 1548, 137 L. Ed. 2d 718 (1997) (the federal plain error rule of Federal Rule of Criminal Procedure 52 applies even in the context of structural error; "the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure"). Accordingly, we should not assume that alleged error consisting of a violation of the public trial right is beyond the well-settled meaning of our appellate rules.

¶33  Many jurisdictions hold that the failure to object precludes review of claimed violations of the right to a

[11] I do not address here whether this is an appropriate conclusion, but question it in my concurrence in *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012).

public trial or subjects such claims to the particular jurisdiction's rules for forfeited constitutional error. Cases include *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011), *cert. denied*, 133 S. Ct. 277 (2012); *Downs v. Lape*, 657 F.3d 97 (2d Cir. 2011) (recognizing state procedural rule); *United States ex rel. Bruno v. Herold*, 408 F.2d 125, 128-29 (2d Cir. 1969); *United States v. Bansal*, 663 F.3d 634, 661 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 2700 (2012); *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006) (noting that claim was of structural error); *Tillman v. Bergh*, No. 2:06--CV-11555, 2008 WL 6843654 at *15, 2008 U.S. Dist. LEXIS 109968, at *43 (E.D. Mich. July 2) (unpublished); *Chase v. Berbary*, 404 F. Supp. 2d 457, 464 (W.D.N.Y. 2005); *Wright v. State*, 340 So. 2d 74, 79-80 (Ala. 1976) (accused may waive the right to a public trial expressly or by failing to object); *Fisher v. State*, 480 So. 2d 6, 7 (Ala. Crim. App. 1985) (same); *People v. Edwards*, 54 Cal. 3d 787, 812-13, 819 P.2d 436, 1 Cal. Rptr. 2d 696 (1991); *People v. Lang*, 49 Cal. 3d 991, 1028, 782 P.2d 627, 264 Cal. Rptr. 386 (1989); *People v. Bradford*, 14 Cal. 4th 1005, 1046-47, 929 P.2d 544, 60 Cal. Rptr. 2d 225 (1997); *Mansingh v. State*, 68 So. 3d 383 (Fla. Dist. Ct. App. 2011); *Alvarez v. State*, 827 So. 2d 269, 273-76 (Fla. Dist. Ct. App. 2002); *Hunt v. State*, 268 Ga. App. 568, 571, 602 S.E.2d 312 (2004); *State v. Loyden*, 2044-1558 (La. App. 3 Cir. 4/6/05); 899 So. 2d 166; *Robinson v. State*, 410 Md. 91, 976 A.2d 1072 (2009) (stating that the fact structural error is involved does not mandate appellate review); *Commonwealth v. Cohen*, 456 Mass. 94, 105-06, 921 N.E.2d 906 (2010) (court looks to whether defendant raised claim of violation of right to a public trial in a timely matter because, like other structural rights, it can be waived); *Commonwealth v. Wells*, 360 Mass. 846, 274 N.E.2d 452 (1971); *People v. Vaughn*, 491 Mich. 642, 821 N.W.2d 288 (2012); *People v. Pollock*, 50 N.Y.2d 547, 550, 407 N.E.2d 472, 429 N.Y.S.2d 628 (1980); *People v. Marathon*, 97 A.D.2d 650, 469 N.Y.S.2d 178 (1983); *State v. Butterfield*, 784 P.2d 153, 155-57 (Utah 1989).

¶34 We should do the same and join the courts that have recognized that review of a claimed violation of the right to a public trial may be forfeited.

## Conclusion

¶35 The court has continued to apply a common law rule despite the fact that it was supplanted by RAP 2.5(a)(3) and, in doing so, has placed alleged violations of the right to a public trial in a category all their own. We have mandated review in every case where this error is alleged, regardless of whether an objection was made, regardless of the impact the asserted closure could have had, regardless of whether the defendant affirmatively participated in the closure, and regardless of whether the closure was of benefit to the defendant.

¶36 We should make the necessary course correction and consider such violations under the same Rules of Appellate Procedure that apply to claims of other valuable constitutional rights. If the defendant failed to object to an alleged courtroom closure and seeks to raise a claim of constitutional error based on the right to a public trial, the defendant must establish that review is justified under RAP 2.5(a)(3).

¶37 I would hold that review is barred under RAP 2.5(a)(3) because Mr. Tarhan did not object to what he now claims was a closure in violation of his right to a public trial and, even assuming a constitutional error occurred, he cannot establish prejudice resulting from the alleged error.

WIGGINS and GONZÁLEZ, JJ., concur with MADSEN, C.J.

■ ¶38 STEPHENS, J. (concurring) — I agree that Taner Tarhan has not established a violation of his public trial right under article I, section 22 of the Washington State Constitution. Nothing in the record before us demonstrates

that the juror questionnaires were withheld from scrutiny by Mr. Tarhan, his counsel, or the public throughout his trial. The Court of Appeals was exactly right in observing that Mr. Tarhan's failure to prove that a closure occurred is fatal to his article I, section 22 claim, and he is not entitled to a new trial. *State v. Beskurt*, 159 Wn. App. 819, 831, 246 P.3d 580 (2011). Because this is the only remedy Mr. Tarhan seeks, our analysis should end here.

¶39 Unfortunately, the lead opinion goes on to make statements about article I, section 10 that are inconsistent with our precedent and erode the value of open court records. Article I, section 10 of the Washington Constitution promises that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." The lead opinion concludes that article I, section 10 is not implicated in this case because no one invoked the procedures under GR 31(j) regarding juror information. Lead opinion at 448 ("The privacy presumption of individual juror information exists until GR 31(j) procedures are triggered and requirements are met, none of which occurred here."). This is a dubious proposition. As a constitutional mandate, article I, section 10 looms larger than a court rule. *See Rauch v. Chapman*, 16 Wash. 568, 575, 48 P. 253 (1897) (noting article I, section 10 and "provisions of the organic law are alike declared to be mandatory"). Indeed, we have recognized that court rules concerning access to court records and proceedings must be construed consistent with constitutional guaranties of openness. *See Seattle Times Co. v. Serko*, 170 Wn.2d 581, 598, 243 P.3d 919 (2010) (vacating sealing order under GR 15 for failure to conduct constitutional analysis); *see also State v. Duckett*, 141 Wn. App. 797, 807-09, 173 P.3d 948 (2007) (explaining relationship between GR 31 and public trial rights).

¶40 The lead opinion finds no article I, section 10 issue because of "[t]he privacy presumption of individual juror information" under GR 31(j). Lead opinion at 448. But, our constitutional analysis necessarily begins with " 'the pre-

sumption of openness.' " *Serko*, 170 Wn.2d at 597 (quoting *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005)). Under *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982), a court must undertake the five-part constitutional analysis before entering an order sealing records.[12] The Court of Appeals was thus correct in concluding that "there can be no serious dispute that the trial court in this case erred by failing to conduct a *Bone-Club* hearing before entering its sealing order under the public's article I, section 10 right to open court proceedings." *Beskurt*, 159 Wn. App. at 834 (citing *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995)).

¶41 The lead opinion attempts to avoid this conclusion by suggesting that the questionnaires at issue were not really court or trial records. Lead opinion at 448 n.8. This is pure fiction. No one has suggested the questionnaires were simply rough notes that could have been discarded after trial. The lead opinion's gratuitous suggestion that this would be an acceptable practice is troubling. More importantly, the trial court in fact *filed the questionnaires*, plainly making them part of the record of Mr. Tarhan's trial. And, it entered an order sealing the documents without conducting a *Bone-Club* (i.e., *Ishikawa*) analysis.[13]

¶42 The only question is whether the trial court's failure to conduct the five-part analysis under article I, section 10

---

[12] This is commonly referred to as the *Bone-Club* test because this court in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995), adopted the factors outlined in *Ishikawa* and *Allied Daily Newspapers of Washington v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993). To be precise, *Bone-Club* addresses the public trial right under article I, section 22, while *Ishikawa* concerns the broader guaranty of openness under article I, section 10. We recognized in *Bone-Club* that "[t]he section 10 guaranty of public access to proceedings and the section 22 public trial right serve complementary and interdependent functions in assuring the fairness of our judicial system." 128 Wn.2d at 259. And, we have recognized that the *Bone-Club* (or *Ishikawa*) test includes both substantive and procedural requirements. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 807, 100 P.3d 291 (2004).

[13] The lead opinion also finds it significant that "only one copy of the documents was sealed." Lead opinion at 447 n.6. I have no idea why this matters. While the record before us is silent as to whether counsel's copies of the questionnaires were returned or destroyed, this does not mean the sealed questionnaires were somehow kept public.

requires granting Mr. Tarhan a new trial. It does not. As noted, Mr. Tarhan has not demonstrated a violation of his public trial right under article I, section 22; the sealing order occurred after the trial concluded. While the absence of findings to justify a sealing order could properly result in a remand in a different case, *see Ishikawa*, 97 Wn.2d at 45-46, here Mr. Tarhan seeks a new trial, not reconsideration of the sealing order. Accordingly, there is no need to put the parties and the lower court through the paces of a new hearing. Mr. Tarhan's conviction should simply be affirmed.

FAIRHURST, J., concurs with STEPHENS, J.

Reconsideration denied March 26, 2013.