IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31382-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN P. HARRINGTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Steven Harrington appeals his convictions for second degree rape and unlawful imprisonment of his girlfriend, arguing that his public trial rights were violated and the evidence was insufficient to support the convictions. Because the record does not support the public trial argument and the evidence does support the convictions, we affirm.

FACTS

This matter arose from a trip taken by Mr. Harrington and C.P. from their home in Spokane to his family in Okanogan County. In late 2011 and early 2012, the couple were involved in an intimate relationship and lived together. Late on February 5, 2012, the two left on a trip to visit Mr. Harrington's family in Oroville. Prior to leaving, the two had engaged in consensual sexual acts and smoked oxycodone together. On their way

out of town, the two bought a variety of alcoholic beverages, which they consumed during the drive. At some point relatively early in the drive, they stopped briefly to engage in more consensual sexual acts.

After they had resumed driving the two got into an altercation sparked by a song playing on the stereo, during which Mr. Harrington struck C.P. a number of times in the face and gave her a bloody nose. C.P. exited the vehicle and began walking down the road, looking for a house. Mr. Harrington followed her in the vehicle, pleading with her to get back in. Because they were in a remote area with no houses, she eventually reentered the vehicle and the two resumed driving.

A few minutes later, Mr. Harrington stopped the vehicle and told C.P. he had cheated on her the previous day. She opened the door and attempted to get out, but he grabbed her hair and pulled her back in, commanding her to close the door. He then slammed her head against the window several times. After this he pulled down his pants, but when she pleaded that she did not want to have sex, he grabbed her by the hair and forced her to engage in oral sex. He then picked her up and set her on his lap, forcibly penetrating her.

Afterwards, the two continued on to the house of Mr. Harrington's sister in Omak. There, C.P. asked Mr. Harrington for the keys to her pickup, but was thrown to the ground and kicked several times. Shortly thereafter, the two went to bed together. Once

2

Mr. Harrington had fallen asleep, C.P. found the keys and left—immediately reporting the incident to the police.

Mr. Harrington was tried in the Okanogan Superior Court. At trial, he testified to substantially the same timeline of events given by C.P., but differing on a number of details. He minimized his own drug and alcohol consumption, testified to more substantial earlier incidents of consensual sex, and stated that C.P. initiated the physical altercation. He then denied that any further sexual contact or violence occurred after the altercation. He also highlighted C.P.'s propensities for jealousy and drama in claiming that she had fabricated the incident. Ultimately, the jury found Mr. Harrington guilty of second degree rape and unlawful imprisonment.

## ANALYSIS

The issues presented on appeal involve a claim that Mr. Harrington's right to a public trial was violated on three occasions, as well as contentions that the evidence was insufficient to support either charge. We address the arguments in the order noted.

*Public Trial Rights*

Mr. Harrington contends that the court violated his Washington Constitution article I, sections 10 and 22 public trial rights when it allowed voir dire of a prospective juror concerning answers given to the juror questionnaire, when it permitted the questioning of a juror outside the presence of the public, and when it redacted the names

on the juror questionnaires. However, the record does not factually support the claim that there was any actual closure of the courtroom.

Article I, sections 10 and 22 guarantee a defendant the right to a trial open to the public. In order for a defendant's public trial rights to be breached (1) the proceeding must implicate the public trial right, (2) there must in fact be a closure of the courtroom, and (3) that closure must not be justified. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). A closure occurs where the courtroom is "completely and purposefully closed to spectators." *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011).

Mr. Harrington first claims a public trial right violation where juror 23 was struck because of a previous criminal trial of an undisclosed nature and disposition. He claims that she was struck based upon answers given in the juror questionnaire. However, this claim is not supported by the facts in the record. During jury selection, the prosecutor asked all the potential jurors whether any of them had ever been accused of a crime, and then followed up individually with each affirmative answer. While juror 23 declined to provide details on the nature and disposition of her own trial, she stated that she had hard feelings stemming from that trial that would affect her ability to make a decision based solely upon the evidence presented. The court struck the juror for cause. There is nothing in the record indicating any reliance upon the juror questionnaires or any event during jury selection occurring outside the presence of the public. Accordingly, the

record does not support the contention that there was a closure of the courtroom during jury selection.

Mr. Harrington next claims that during trial the court improperly interviewed juror 8 outside the presence of the public. However, the record clearly indicates that the interview in fact took place in open court, but merely outside the presence of the other jurors. Public trial rights require that the public be allowed access to the proceeding, not that every portion of the proceeding be conducted in front of the jury. Accordingly, there was no closure of the courtroom.

Finally, Mr. Harrington claims that his public trial rights were violated by the court redacting the names on the juror questionnaires prior to entering them into the public record. It is well established that where juror questionnaires serve merely as a framework for oral voir dire and have no independent effect on the trial, sealing those questionnaires is not considered a closure. *State v. Beskurt*, 176 Wn.2d 441, 293 P.3d 1159 (2013); *In re Yates*, 177 Wn.2d 1, 29-30, 296 P.3d 872 (2013). The names of the jurors cannot possibly be seen as having any independent effect upon the trial. Consequently, redacting the jurors' names in the interests of juror privacy does not constitute a closure.

Because Mr. Harrington has failed to show that there was any closure of the courtroom, we conclude that his public trial rights have not been violated.

*Sufficiency of the Evidence to Establish Rape*

Mr. Harrington argues that C.P.'s tendencies to dramatics, anger, and jealousy weigh in favor of believing his version of the events over hers, so that the jury could not have found him guilty of rape.

Well-settled standards govern our review of this appeal. Evidence is sufficient to support a verdict if the trier of fact has a factual basis for finding each element of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). This court will consider the evidence in a light most favorable to the prosecution. *Id.* It is not the function of an appellate court to reweigh evidence; accordingly, this court will defer to the jury as to the credibility of witnesses and the weight of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

With this in mind, the outcome of this appeal is clear. As charged, the State was required to show (1) that Mr. Harrington engaged in sexual intercourse with C.P., which (2) occurred by forcible compulsion. RCW 9A.44.050; Clerk's Papers at 90. Forcible compulsion means "physical force which overcomes resistance." RCW 9A.44.010(6).

The victim vocally expressed a lack of consent and physically resisted throughout the incident. Her story was bolstered at trial by evidence of her numerous injuries,

6

evidence of blood and semen from the vehicle and her clothes, and witnesses to her mental state after the fact. Mr. Harrington's argument on appeal is merely an assertion that his story is more credible than hers. However, this court does not reweigh evidence, and there is a factual basis for finding that sexual intercourse occurred by physical compulsion. Accordingly, the evidence was sufficient.

*Sufficiency of the Evidence to Establish Unlawful Imprisonment*

Mr. Harrington also claims that the evidence was insufficient to establish the charge of unlawful imprisonment. He claims that escape was possible, because at some point C.P. could get out of the vehicle and flee.

It is a defense to unlawful imprisonment that the victim had a reasonably available avenue of escape. *See State v. Washington*, 135 Wn. App. 42, 50, 143 P.3d 606 (2006) (citing *State v. Kinchen*, 92 Wn. App. 442, 452 n.16, 963 P.2d 928 (1998)). However, immediately prior to the rape, C.P.'s attempted escape was thwarted when Mr. Harrington grabbed her hair and forced her to remain within the vehicle. This establishes that for some period of time, including the period establishing the charge, there was no available avenue of escape because Mr. Harrington was actively preventing it. The mere fact that she might have been able to escape at some other point does not negate this. Accordingly, the evidence was sufficient.

The convictions are affirmed.

No. 31382-4-III
*State v. Harrington*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.


WE CONCUR:


_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.


8