IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33022-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEREMIAH RAY LOGAN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — A jury convicted Jeremiah Ray Logan of second degree

rape of a child and second degree child molestation. In his appeal, he asserts that his

constitutional right to a unanimous jury verdict was violated because the trial court failed

to give a *Petrich*[1] instruction. We conclude that Mr. Logan invited this error and we

decline to review it. We therefore affirm.

FACTS

Desiree Logan married Jeremiah Logan in 2009. Desiree had a daughter, B.E.H.,

who was not Jeremiah's daughter. B.E.H. was born on January 22, 1999. The Logans

---

[1] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

had three younger children together, and for a period of time, all six lived in a three bedroom trailer. They had a single computer in the home, which they kept in the master bedroom on a computer desk next to the head of the bed.

Around September or October 2011, Ms. Logan came home from work to find B.E.H. sitting on her husband's lap, alone in the master bedroom, watching YouTube videos on the computer. The way they were sitting "instantly" made Ms. Logan feel uncomfortable, and she thought it was inappropriate. Report of Proceedings (RP) at 84.

Around February 9, 2012, Desiree Logan came home from work and the master bedroom door was locked. B.E.H. and her stepfather were alone in the room. Ms. Logan unlocked the door with a key, and opened the door to find B.E.H. walking toward the door with her pants unzipped and Jeremiah sleeping in bed. When Desiree asked B.E.H. why her pants were unzipped, B.E.H. said she was looking at pornography on the computer. However, much later she stated that her stepfather had been rubbing her vagina while they sat on the bed watching pornography, and when her stepfather heard the door being unlocked he pretended to be asleep.

On February 16, 2012, a confidant convinced B.E.H. to report the abuse. Just prior to reporting the abuse, and while Mr. Logan was asleep, B.E.H. took her younger half-siblings to a neighbor's house and the neighbor called the police.

2

PROCEDURE

On June 27, 2012, the State charged Jeremiah Logan with second degree rape of a child and second degree child molestation, occurring "on or about between September 15, 2011 and February 17, 2012." Clerk's Papers (CP) at 1. At trial, B.E.H. testified to roughly half a dozen instances in which her stepfather molested or raped her. She testified that these sexual assaults occurred after she started seventh grade in the fall of 2011, and continued almost until she left the trailer.

Both the State and Mr. Logan filed proposed jury instructions. Both sets permitted the jury to find guilt based on the broad timeframe charged. Specifically, Mr. Logan's proposed to-convict instruction for rape of a child in the second degree stated in relevant part:

> To convict the defendant of the crime of rape of a child in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1)  That on or about the Fall of 2011 to February 16, 2012, the defendant had sexual intercourse with [B.E.H.];

CP at 45.

Similarly, Mr. Logan's proposed to-convict instruction for second degree child molestation stated in relevant part:

3

> To convict the defendant of the crime of child molestation in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about Fall 2011 to February 16, 2012, the defendant had sexual contact with [B.E.H.];

CP at 47. Neither the State nor Mr. Logan proposed a *Petrich* instruction.

The trial court later prepared its jury instructions. In its to-convict instructions, the trial court gave a broad timeframe substantially similar to the timeframe quoted above. The trial court presented its instructions to both counsel, and asked for their comments. The State had no objections or exceptions. Mr. Logan's counsel said, "No exceptions or objections from the defense, either." RP at 174.

The jury found Mr. Logan guilty of second degree rape of a child and second degree child molestation. The trial court sentenced him to 210 months to life imprisonment.

## LAW AND ANALYSIS

A. *Failure to give a* Petrich *instruction*

Mr. Logan contends the trial court erred because it did not instruct the jury on unanimity. He argues a unanimity instruction was required because the State presented evidence of multiple acts that could constitute the crimes charged.

4

"'To convict a person of a criminal charge, the jury must be unanimous that the defendant committed the criminal act.'" *State v. Bobenhouse*, 166 Wn.2d 881, 892, 214 P.3d 907 (2009) (quoting *State v. Camarillo*, 115 Wn.2d 60, 63, 794 P.2d 850 (1990)). When the evidence indicates that several distinct criminal acts have been committed, but the defendant is charged with only one count of criminal conduct, jury unanimity must be protected. *State Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014). To protect unanimity, the State may elect on which act it relies for conviction, or the jury must be instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *State v. Barrington*, 52 Wn. App. 478, 480, 761 P.2d 632 (1988). Washington labels such a jury instruction a "*Petrich* instruction." A trial court's failure to give a *Petrich* instruction when warranted violates a defendant's state constitutional right to a unanimous jury verdict and the United States constitutional right to a jury trial. *Camarillo*, 115 Wn.2d at 64 (quoting *Kitchen*, 110 Wn.2d at 409).

Nevertheless, the invited error doctrine precludes appellate review of an alleged error affecting even a constitutional right of a defendant. *State v. Henderson*, 114 Wn.2d 867, 870-71, 792 P.2d 514 (1990). "The invited error doctrine is a strict rule that precludes a criminal defendant from seeking appellate review of an error he helped create." *State v. Carson*, 179 Wn. App. 961, 973, 320 P.3d 185 (2014), *aff'd*, 184 Wn.2d 207, 357 P.3d 1064 (2015).

Here, Mr. Logan's proposed jury instructions for both charged offenses allowed him to be convicted if the jury found the criminal conduct to have occurred from "on or about the Fall of 2011 to February 16, 2012." CP at 45, 47. The trial court's jury instructions provided a substantially similar broad timeframe. When the trial court asked whether Mr. Logan had any comments to the court's instructions, defense counsel answered, "No exceptions or objections from the defense, either." RP at 174. We conclude that Mr. Logan, by proposing near identical instructions as those actually given by the trial court, by not proposing a *Petrich* instruction, and by not objecting to the court's instructions, has invited the error he now raises. We decline to review this alleged error.

No. 33022-2-III
*State v. Logan*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____     _____
Fearing, C.J.                                 Pennell, J.