

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39438-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BARCLAY DYLAN BENNETT, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Barclay Dylan Bennett appeals his conviction for first degree assault, arguing the trial court erred by admitting inadmissible hearsay statements and violating his right to confrontation.  We conclude that Bennett invited any error and therefore cannot raise it on appeal.  We affirm Bennett's sentence and remand for the limited purpose of striking the victim penalty assessment (VPA) fee and DNA fee.

BACKGROUND

In the early evening of April 12, 2022, Ralph Kinerson was with his acquaintance, Abbey Pearson, at his home.  Kinerson testified that he heard a knock at the door and could see a male with his head down through the peephole.  When Kinerson unlocked the door, he was attacked by the individual.  After the two were separated, Kinerson realized

that he had been stabbed. At trial, Kinerson testified that during the struggle, he recognized Bennett as the person who attacked him. Bennett is married to Robyn Roberts, an acquaintance of Kinerson, who visited him occasionally.

Cori Jackson, a neighbor, heard yelling and saw Kinerson wrestling on the ground with another man. Jackson watched the other man get up and walk toward the apartments across the street while Kinerson remained on the ground. Jackson called 911 when she realized that Kinerson had been stabbed. Jackson testified that she heard Kinerson say he had been stabbed and saw blood all over him. Later that evening, at a show up identification, Jackson identified Bennett as the person she saw wrestling with Kinerson.

Officers also spoke to Abbey Pearson who provided a brief description of the suspect but did not want to talk further.

Bennett was subsequently charged with one count of first degree assault with a deadly weapon.

Bennett's theory of defense was that police failed to investigate other suspects and that gaps in the evidence led to reasonable doubt. In opening statements, Bennett pointed out that other than Kinerson there were three people present during the struggle: himself, an unknown male, and Abbey Pearson. The police failed to investigate the two other people as suspects, and there was no direct evidence that Bennett was the one who stabbed Kinerson.

Bennett testified and his version of the events differed from the other witnesses. Bennett indicated that he was walking to a friend's house, when he was attacked by Kinerson, "a known drug dealer." Rep. of Proc. (RP) at 409. Bennett testified that during the struggle, a woman began spraying him with pepper spray while Kinerson was punching him. Bennett indicated an unknown male was also present during the scuffle. After the two separated, Bennett walked to his friend's apartment to wash off the pepper spray. Police contacted Bennett at the apartment and detained him. Bennett denied stabbing Kinerson during the altercation.

*Procedural history*

Prior to trial, Bennett filed a motion in limine to prohibit Kinerson from testifying as to why Kinerson believed Bennett was at his residence. Defense counsel indicated that Kinerson's belief about Bennett's motivation was based solely on a hearsay statement from Bennett's wife to Kinerson's daughter, Malea, that Bennett came there to attack Kinerson. Counsel noted that "obviously hearsay is not allowed." RP at 190. The State agreed, stating that it had advised Kinerson that he could only testify regarding information for which he had first-hand knowledge. That is, "what he said, what he did, what he heard, what he saw, [and] what he observed." RP at 191. The court stated that as long as neither party went into this, it should not come up and, if it did, the court would stop it.

During trial, Kinerson was asked about his relationship with a woman named Robyn and he explained she would occasionally stop to visit when she was visiting friends in his neighborhood. Kinerson explained that he knew Robyn was married to Bennett. He was able to identify Bennett in the courtroom. Additionally, Kinerson testified that when the incident occurred, as both men were struggling on the ground, he looked at the man's face and realized it was Bennett. Prior to this incident, he recalled seeing Bennett in his neighborhood two or three times.

Detective Devin Presta was called as a witness by the State. During direct examination, the State asked him questions about his investigation of the crime. During cross-examination, defense counsel asked Detective Presta about his follow-up investigation and statements made to him by witnesses.

> [DEFENSE COUNSEL]: Do you recall following up with—Malea Kinerson is her name.
>
> [DETECTIVE PRESTA]: I documented that in the report. I don't have independent recollection of talking to her.
>
> . . . .
>
> [DEFENSE COUNSEL]: So in your report, you had indicated that Mr. Kinerson indicated he believed this Abbey person had stolen some of his personal items; is that correct?
>
> [DETECTIVE PRESTA]: Correct.
>
> [PROSECUTOR]: Objection. Relevance and hearsay.
>
> THE COURT: I'll let you go a little further with it, Counsel.

4

[DEFENSE COUNSEL]: As far as stealing some of his personal items, did she—did Mr. Kinerson indicate he suspected she stole his vehicle?

[DETECTIVE PRESTA]: Yes.

[DEFENSE COUNSEL]: Going back to page 2 of 4, Mr. Kinerson's daughter, Malea, had indicated to you there was a stack of money that was exchanged that night?

[DETECTIVE PRESTA]: Let me refer to the report. I remember—

[DEFENSE COUNSEL]: Sure.

[DETECTIVE PRESTA]: —there being a statement about that. There is a statement about a third party that she spoke with, but I don't know who that is.

RP at 289-90.

On redirect, the State followed up on this line of questioning:

[PROSECUTOR]: Detective Presta, page 2 of 4 of your May 17, 2022, report, middle paragraph, it starts with, "Malea believes"—

[DETECTIVE PRESTA]: Okay.

[PROSECUTOR]: Can you read it to yourself. Do not read it out loud. Read that paragraph, and let me know when you're done.

[DETECTIVE PRESTA]: Okay.

[PROSECUTOR]: Did Malea tell you that she believed the incident occurred—

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: I don't know—

[DEFENSE COUNSEL]: Hearsay and a speculation.

5

THE COURT: Overruled.

RP at 291-92. The State then continued its question to Detective Presta:

[PROSECUTOR]: Just read this second sentence, the one that begins with "Malea believes." [sic]

[DEFENSE COUNSEL]: Objection. Reading from notes.

THE COURT: I will allow him to do it, under the circumstances.

[DETECTIVE PRESTA]: The one that starts, "Malea certainly believes Robyn"—

[PROSECUTOR]: Yes.

. . . .

[DETECTIVE PRESTA]: It states, "Malea believes Robyn and her father are friends, and the suspect assaulted her father because of his relationship with Robyn."

RP at 292.

*Motion to strike*

Defense counsel then requested the court to strike the comments made by Officer Presta "regarding Robyn and [Kinerson], all of that" on the basis that the comments directly or indirectly violated the order in limine. RP at 295.

[DEFENSE COUNSEL]: I know that we had objected at the time and a motion, and you did overrule it. I did want to just refer back to our motions in limine. That was something that we had specifically spoke about with Mr. Kinerson not saying anything about that relationship.

I had thought it was applied towards all the witnesses who had knowledge of a particular relationship. I didn't think it was going to come in with Presa—Officer—sorry—Detective Presta until it was brought in.

6

So I am asking for a motion to strike based on the fact that it is our motion in limine that there can't be any sort of relationship stuff because that is hearsay. We don't—we can't cross-examine Robyn nor can we cross-examine Makayla—or Malea—I'm not sure.

RP at 295-96.

The prosecutor responded that it was true the statements could be characterized as hearsay. However, it explained the problem was that defense opened the door when they began asking Detective Presta about comments made to him by other witnesses. The prosecutor reasoned these were all hearsay statements and "all the [S]tate did was complete the conversation." RP at 297. The prosecutor noted that defense counsel did not ask Detective Presta what else Malea told Detective Presta so the State sought to have that one final sentence read.

Defense counsel acknowledged that they "did open the door to hearsay with Malea, but specifically directed it at Abbey's actions, not at anything Abbey said." RP at 298. Counsel also argued that the State was not "just completing the record by having Detective Presta read the one statement that he read," but because there were two separate statements, and based on the motion in limine, the "whole story" did not need to come in. RP at 299.

The court denied the motion to strike, stating:

So I am not going to strike the comments about Robyn and Malea, if you will, made by Detective Presta for a couple of reasons. But, primarily, I am satisfied that Defense opened [the] door here, and there's a couple

7

ways to approach this, but one was is just to leave it alone. You know, one way is to let the [S]tate just sort of complete going through the door and ask to the extent they feel necessary.

But, here, once the defense opened the door, I did allow the [S]tate to proceed. It was limited because that door has been opened. The general theory, if you look in Mr. Tegland's comments,[1] you don't get to open the door and shut it or partially shut it because you have allowed it to be opened.

Defense did object, though. I will make that clear for the record though. Counsel did a good job of that when the [S]tate attempted to proceed, and I overruled that objection. So I overruled it because I thought the door had been opened.

RP at 301-02.

After the jurors were brought back into the courtroom, trial continued. Bennett was subsequently found guilty of the crime of first degree assault as charged. At sentencing, the court imposed the $500 VPA fee and the $100 DNA fee.

Bennett appeals.

ANALYSIS

1.  HEARSAY STATEMENTS

Bennett assigns error to the trial court's decision to allow Detective Presta to testify regarding a statement made to him by Malea about her belief as to why Bennett attacked Malea's father, Kinerson. In doing so, Bennett contends that the court not only

---

[1] 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14, at 64 (6th ed. 2016).

8

abused its discretion but also violated his right to confrontation. We conclude that any error in admitting the hearsay evidence was invited by Bennett and therefore we decline to review the assignment of error.

"We review de novo the trial court's interpretation of the evidentiary rules and its application of the rules for abuse of discretion." *State v. Rushworth*, 12 Wn. App. 2d 466, 470, 458 P.3d 1192 (2020) (citation omitted). "Abuse of discretion occurs when the trial court's ruling is manifestly unreasonable or based on untenable grounds or reasons." *State v. Rodriquez*, 187 Wn. App. 922, 939, 352 P.3d 200 (2015). Our review requires us to examine the appropriate legal doctrines and testimony in question.

A thorough review of the doctrines of open door, curative admissibility, and invited error was provided by this court in *Rushworth*. 12 Wn. App. 2d at 473. "Put simply, the open door doctrine is a theory of expanded relevance." *Id*. It permits a party to admit evidence "on a topic that would normally be excluded for reasons of policy or undue prejudice when raised by the party who would ordinarily benefit from exclusion." *Id*. This doctrine "recognizes that a party can waive protection from a forbidden topic" by discussing the subject. *Id*. The classic example is when a criminal defendant opens the door and testifies to their good character, thereby allowing the State to respond with evidence of prior bad acts to refute this testimony. *See Id.* at 473-74. While the open door doctrine expands the relevance of evidence, it does not expand the admissibility of evidence under other evidence rules.

9

Whereas the open door doctrine tends to expand relevance, the doctrine of curative admissibility "permits the introduction of evidence that is inadmissible for reasons *other than* relevance." *Id.* at 475 (emphasis added). "'Curative admissibility, in its broadest form, allows a party to introduce otherwise inadmissible evidence when necessary to counter the effect of improper evidence previously admitted by the other party *without objection*.'" *Id.* (emphasis added) (quoting *Wright v. Virginia*, 23 Va. App. 1, 7, 473 S.E.2d 707 (1996)).

In the context of a criminal trial, Washington does not allow the State to use curative admissibility to introduce its own inadmissible evidence when the State fails to object to inadmissible evidence introduced by a defendant. *Id.* at 476. Instead, "when a defendant does not merely open the door to a newly relevant topic, but attempts to introduce incompetent evidence such as hearsay, the prosecutor's recourse is to object." *Id.* If the objection is successful, nothing more is required to correct the record other than a possible motion to strike. *Id.* However, if unsuccessful, the prosecutor often has two options: (1) seek an interlocutory appeal, or (2) more realistically, "accept the trial court's ruling as the law of the case and introduce responsive evidence within the terms" of that ruling. *Id.* For the second option, the next doctrine—invited error—will often protect against reversal on appeal. *Id.*

The invited error doctrine is an appellate remedy that "'precludes a criminal defendant from seeking appellate review of an error [they] helped create, even when the

alleged error involves constitutional rights.'" *State v. Tatum*, 23 Wn. App. 2d 123, 128,

514 P.3d 763, *review denied*, 200 Wn.2d 1021, 520 P.3d 977 (2022) (alteration in

original) (quoting *State v. Carson*, 179 Wn. App. 961, 973, 320 P.3d 185 (2014)). The

invited error doctrine can apply to evidentiary rulings such as testimony elicited by the

defense. *Rushworth*, 12 Wn. App. 2d at 477.

As noted in *Rushworth*, "[i]n the context of a criminal trial, the invited error

doctrine provides the State redress for a defendant's evidentiary errors without condoning

misconduct." *Id*. *Rushworth* goes on to provide a striking example:

> A defendant seeks to introduce a portion of a hearsay statement at trial.
> The State properly objects, but the defendant persists, arguing the statement
> is not hearsay. The trial court agrees with the defense and overrules the
> State's objection. Under these circumstances, it would likely not be
> misconduct for the State to acquiesce in the trial court's ruling and request
> introduction of the remaining portion of the statement in question, if
> relevant. Should the trial court admit the balance of the statement, the
> invited error doctrine would prohibit the defendant from reversing course
> on appeal and claiming error in the admission of the evidence.

*Id*. at 477.

While the doctrines of open door and invited error are distinct, they can still occur

simultaneously. Here, the prosecutor objected to defense counsel's line of cross-

examination on the grounds of hearsay (invited error) and relevance (open door).

Defense counsel did not respond or explain. Instead, the court implicitly overruled the

objection when it allowed defense counsel to continue. On redirect, the prosecutor asked

11

Detective Presta to read additional hearsay statements from the same conversation.

Bennett moved to strike this additional hearsay, acknowledging that he had "open[ed] the

door to hearsay with Malea," but arguing that the opening was limited. RP at 298. The

trial court concluded that Bennett had opened the door and denied his motion to strike the

statement introduced by the State.

The apparent purpose of Bennett's cross-examination was to introduce hearsay

statements to show that one of the other persons present may have a motive to hurt

Kinerson, and to suggest that law enforcement failed to follow up on this information as

part of its investigation. This opened the door for the State to respond with evidence that

its investigation was thorough and based on the information it had, including additional

evidence pertaining to Bennett's motive. Any error in introducing the hearsay statements

was invited by Bennett over the State's objection.

We conclude that Bennett's questions on cross-examination opened the door to the

topic of whether the investigation was incomplete and then invited the court to admit

hearsay evidence on this topic. Although we apply the invited error doctrine to the

hearsay statements, rather then the open door doctrine, we can affirm a judgment on any

ground within the pleadings and the proof. *Burnet v. Spokane Ambulance*, 131 Wn.2d

484, 493, 933 P.2d 1036 (1997).

Bennett contends that regardless of error, Malea Kinerson's statements were

testimonial and thus the admission of them violated his right to confrontation. But

invited error precludes review even when the alleged error involves a constitutional right. *Tatum*, 23 Wn. App. 2d at 128.

2.   VPA AND DNA COLLECTION FEES

Bennett contends that the $500 VPA fee should be struck because he is indigent. He also asserts that the $100 DNA collection fee should be struck. The State concedes. We agree and remand for the court to strike the VPA and DNA collection fees from the judgment and sentence.

Under former RCW 7.68.035(1)(a) (2018), a judge was required to impose the $500 VPA fee for one or more felony or gross misdemeanor convictions. However, earlier last year, legislation amended this statute. *See* LAWS OF 2023, ch. 449, § 1(3). Effective July 1, 2023, this amendment included a provision instructing a court to not impose the VPA fee if the court found the defendant indigent at the time of sentencing. *See* RCW 10.01.160(3). Additionally, the legislature amended RCW 43.43.7541(2), instructing the court to waive any fee for the collection of DNA imposed prior to July 1, 2023, upon a motion by a defendant. Bennett is entitled to the benefit of these amendments because his case was pending on direct appeal. *See State v. Ramirez*, 191 Wn.2d 732, 735, 426 P.3d 714 (2018). This court should strike the $500 VPA fee because the sentencing court found Bennett indigent. Likewise, this court should strike the $100 DNA fee, which was imposed prior to July 1, 2023.

Affirmed but remanded to strike fees.

_____
Staab, J.

WE CONCUR:

_____
Cooney, J.

_____
Lawrence-Berrey, C.J.